**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Docket no. 2:15-cr-00079-GZS |
| SHAUN WRAY et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER ON MOTIONS TO SUPPRESS**

Before the Court are (i) the Motion to Suppress Wire Intercepts and Incorporated Memorandum by Defendants Shaun Wray and Sharif Cargo (ECF No. 290) (the "Wray and Cargo Motion") and (ii) Defendant Gary Delima's Motion to Suppress Wire Intercepts and Incorporated Memorandum of Law (ECF No. 292), joining the Wray and Cargo Motion (together with the Wray and Cargo Motion, the "Motions to Suppress"). The Wray and Cargo Motion has also been joined by Defendants Malik Delima and Guy Noel. (ECF Nos. 291 & 312.) The Court has determined that no hearing is necessary to decide these pending motions.

For the reasons explained below, the Court DENIES the Motions to Suppress.

**I.    DISCUSSION**

a. <u>Wiretap Orders and Motions to Suppress</u>

In three orders (ECF Nos. 325-4, 325-7 & 325-10) (the "Wire Intercept Orders"), the Honorable Christina Reiss, United States District Court for the District of Vermont, granted three separate applications seeking authorization for the interception of wire and electronic communications applicable to a total of four cellular phone numbers. (ECF Nos. 325-2, 325-5 &

325-8.)  Each of the applications was supported by an affidavit sworn by Special Agent Timothy Hoffman.  (ECF Nos. 325-3, 325-6 & 325-9.)

Defendants have argued in the Motions to Suppress that each of the Wire Intercept Orders was issued based on an incorrect determination that the requested wire and electronic intercepts were "necessary" to law enforcement's ongoing investigation.  In particular, Defendants argue in the Wray and Cargo Motion that because law enforcement obtained evidence that provided probable cause for the arrest and indictment of Shaun Wray and Sharif Cargo prior to the court's granting the first Wire Intercept Order, traditional investigative techniques had succeeded, and the wire intercepts were thus unnecessary.  (ECF No. 290 at PageID # 699.)  As the Motions to Suppress point out, each of the Wire Intercept Orders must have been supported by a proper determination of necessity for that particular Wire Intercept Order to be legally valid.  (ECF No. 290 at PageID # 700; ECF No. 292 at PageID # 717.)

Defendants also emphasize that the wire intercepts were sought in connection with an investigation into suspected drug trafficking activities, not an investigation of the suspected violations of 18 U.S.C. § 1029 that are the subject of this case.  In fact, suspected violations of 18 U.S.C. § 1029 are not mentioned in any of the applications or affidavits supporting the Wire Intercept Orders.  Thus, Defendants are correct that this Court must not consider whether the wire intercepts were necessary to an investigation of the counterfeiting and fraud charges now brought against Defendants, but rather whether they were necessary to the drug trafficking conspiracy that was the subject of the investigation described in the application and affidavit supporting each of the Wire Intercept Orders.

      b.  <u>Legal Standard for Necessity</u>

Title 18, United States Code, § 2518 requires that an application for interception of wire communications include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(c). This "necessity requirement was designed to assure wiretapping is not resorted to in situations where the traditional investigative techniques would suffice to expose the crime." <u>United States v. Rivera-Rosario</u>, 300 F.3d 1, 18 (1st Cir. 2002) (internal citations and quotations omitted). "[T]he Government is not required to show that other investigatory methods have been completely unsuccessful." <u>Id.</u> at 19 (internal citations omitted). The Government is also not required to "run outlandish risks or to exhaust every conceivable alternative before resorting to electronic surveillance." <u>Id.</u> (internal citations omitted). The test is a pragmatic one and requires reviewing courts, "in a practical and commonsense manner[,] to determine whether the facts which [the supporting affidavit] sets forth are 'minimally adequate' to support the findings made by the issuing judge." <u>Id.</u> at 19 n.23 (internal citations and quotations omitted).

To show necessity, "the government must demonstrate that it has made a reasonable, good faith effort to run the gamut of normal investigative procedures before resorting to means so intrusive as electronic interception of telephone calls." <u>United States v. Lopez</u>, 300 F.3d 46, 52 (1st Cir. 2002) (internal citations omitted). In applying the common sense rule, a court considers the nature of the alleged crimes and may give weight to the opinion of investigating agents that, in the circumstances described, other means of investigation were too dangerous and might be counterproductive. <u>See</u> <u>In re Dunn</u>, 507 F.2d 195, 197 (1st Cir. 1974).

      c.   <u>Application of the Necessity Standard to the Wire Intercept Orders</u>

Applying this standard, the Court concludes that each of the Wire Intercept Orders was supported by factual statements that established the necessity of each order to the investigation of the drug trafficking conspiracy that was the subject of law enforcement's investigation of Shaun Wray and Sharif Cargo at the time that each Wire Intercept Order was issued. As explained by the First Circuit, "[T]he government's affidavit must show with specificity why ordinary means of investigation will fail; conclusory statements without factual support are not sufficient." <u>Lopez</u>, 300 F.3d at 53. As in <u>Lopez</u>, the affidavit underlying each of the Wire Intercept Orders provides particular information regarding the progress of the investigation, including through the use of prior wire intercepts (Hoffman Aff. (ECF No. 325-6) at PageID # 961-962; Hoffman Aff. (ECF No. 325-9) at PageID # 1055-56 & 1059), and identifies specific further information that the investigators hoped to uncover through the requested wire intercepts. While the government concedes that traditional investigative techniques, including the use of confidential sources, provided some valuable assistance in the investigation, much of the conspiracy's scope and dealings remained undisclosed. This provides a legally sufficient basis for the issuing court's conclusions that the wiretaps were necessary. <u>See</u> <u>United States v. Villarman-Oviedo</u>, 325 F.3d 1, 10 (1st Cir. 2003) (identifying the need to "uncover[] the full scope of the potential crimes under investigation" as a basis for granting a wiretap application). <u>See also</u> <u>United States v. Bennett</u>, 219 F.3d 1117, 1122 (9th Cir. 2000) ("[T]he mere attainment of some degree of success during law enforcement's use of traditional investigative methods does not alone serve to extinguish the need for a wiretap").

Furthermore, contrary to the arguments in the Motions to Suppress, the investigative goals identified for each requested wire intercept, including the objectives of learning information about

associates and co-conspirators of the already-identified suspects (including suppliers, distributors, and customers), identifying the leaders of the conspiracy, and learning the methods by which the conspirators operated (Hoffman Aff. (ECF No. 325-3) at PageID # 881; Hoffman Aff. (ECF No. 325-6) at PageID # 937-38; Hoffman Aff. (ECF No. 325-9) at PageID # 1014-15), were not too broad and did not extend too far beyond the prosecution of Mr. Wray and Mr. Cargo to meet the necessity standard.  See United States v. Martinez, 452 F.3d 1, 6 (1st Cir. 2006) (holding that the goals of identifying sources of drug supply, identifying the manner of transporting drugs, identifying the manner in which payment was made to sources of supply, identifying drug storage locations, and identifying the manner in which drug proceeds were laundered and invested supported the conclusion that wire intercepts were necessary); Villarman-Oviedo, 325 F.3d at 10 (upholding a wiretap where the goals of the investigation were to "uncover[] the full scope of the potential crimes under investigation, as well as the identities of those responsible" and to "obtain[] evidence of the totality of offenses in which the targets of the investigation were involved").

## II.   CONCLUSION

For the above-stated reasons, the Motions to Suppress (ECF Nos. 290 & 292) are DENIED.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 20th day of June, 2016.